IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| KURT B. CHADWELL, | § § § | |
| Plaintiff, | § § | Civil Action No. C-06-199 |
| v. | § § | |
| NUECES COUNTY, TEXAS, et al., | § § | |
| Defendants. | § | |

### ORDER GRANTING DEFENDANT DAVID ALANIZ' MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendant Lieutenant David Alaniz' Motion for Summary Judgment in the above-styled action. (D.E. 51). For the reasons set forth below, the Court hereby GRANTS Lieutenant Alaniz' Motion for Summary Judgment and DISMISSES Plaintiff's claim against Lieutenant Alaniz with prejudice. Lieutenant Alaniz is hereby DISMISSED from this litigation.

### I. Jurisdiction

This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### II. Procedural Background

#### A. Complaint and Motion for Summary Judgment

On May 17, 2006, Plaintiff Kurt Chadwell filed his Complaint against Lieutenant Alaniz, Nueces County, County Attorney Laura Garza Jimenez, and Nueces County Commissioners Betty Jean Longoria,

H.C. Cazalas, Oscar O. Ortiz and Peggy H. Banales.[1] Plaintiff only alleges one claim against Lieutenant Alaniz: A claim under 42 U.S.C. § 1983 ("Section 1983"), alleging that Lieutenant Alaniz subjected Plaintiff to an unlawful seizure or detention in violation of the Fourth Amendment to the United States Constitution. (D.E. 6, Complaint, ¶¶ 131-134).[2]

On September 8, 2006, Lieutenant Alaniz filed the instant motion for summary judgment. (D.E. 51). Lieutenant Alaniz argues that he is entitled to qualified immunity on Plaintiff's Section 1983 claim for violation of the Fourth Amendment. (Id.).

B. **Plaintiff's Late Response to Lieutenant Alaniz' Motion for Summary Judgment**

Plaintiff's response to Lieutenant Alaniz's motion was due on September 28, 2006. (L.R. 7.4). The day before his response was due, Plaintiff filed a motion seeking an extension of time, until October 10, 2006, to respond to Lieutenant Alaniz' motion. (D.E 58). Given the late timing of the request and Plaintiff's history of seeking extensions in this litigation, the Court denied Plaintiff's request for an extension of time.[3] (D.E. 59).

---

[1] Nueces County Commissioners Longoria, Cazalas, Ortiz and Banales were dismissed from this litigation on September 18, 2006. (D.E. 55).

[2] Plaintiff sued Lieutenant Alaniz in his individual capacity.

[3] Thus far, Plaintiff has not filed one response brief in this case on the day it was due pursuant to the Local Rules.

Nevertheless, Plaintiff did not file a timely response to Lieutenant Alaniz' motion. Rather, Plaintiff essentially granted his own request for an extension of time *that was expressly denied by the Court*. (D.E. 58, 59). Plaintiff waited until October 10, 2006, eleven days after the brief was due, to seek leave to file his late response to Lieutenant Alaniz' motion. (D.E. 60). Plaintiff bases his motion for leave largely on the busy schedules of Plaintiff's counsel. (D.E. 60, ¶¶ 4-5) (stating that Plaintiff's attorneys have been "devot[ing] much time and attention to various [other] matters", which are listed out in Plaintiff's motion for leave).

Federal Rule of Civil Procedure 6(b) permits the enlargement of deadlines required by the rules, but if the deadline has passed, the party must submit a motion "showing that the failure to act was the result of *excusable neglect*." Fed. R. Civ. P. 6(b) (emphasis added); see also Miller v. Home Depot U.S.A., Inc., 95 F.3d 50 (1996). However, "*a busy practice does not establish 'excusable neglect'*". Geiserman v. MacDonald, 893 F.2d 787, 793 n. 10 (5th Cir. 1990) (citing McLaughlin v. City of LaGrange, 662 F.2d 1385, 1387 (11th Cir. 1981)) (emphasis added). Plaintiff's arguments essentially boil down to Plaintiff's counsel being too busy with "various matters" and "everyday work" to prepare a response brief

---

Plaintiff has sought an extension of time or permission to file a late response for every response brief he has been required to file. (D.E. 31, 37, 40).

by the deadline set by the Court and the Local Rules. (D.E. 60, ¶¶ 4-5). The Court accordingly finds that Plaintiff has not met the excusable neglect standard necessary to extend the deadline for Plaintiff's response brief. See Fed. R. Civ. P. 6(b).

However, in the interests of justice, the Court will consider Plaintiff's response to Lieutenant Alaniz' motion for summary judgment, as well Plaintiff's supporting evidence. As set forth below, even considering Plaintiff's response and evidence, Lieutenant Alaniz is entitled to summary judgment on Plaintiff's Section 1983 claim that Lieutenant Alaniz illegally seized or detained Plaintiff in violation of the Fourth Amendment.

### III. Summary Judgment Evidence and Undisputed Facts

In support of his motion for summary judgment, Lieutenant Alaniz offers the following evidence:

DX-A: The transcript of the July 26, 2006 deposition of Lieutenant David Alaniz.

(See D.E. 51, attachment).

Plaintiff offers the following evidence in support of his response:

PX-A: Declaration of Plaintiff Kurt Chadwell; and

PX-B: Notice of Disciplinary Suspension With Pay and Notice of Contemplated Termination.

(See D.E. 60, Exh. A, attachments).

The following facts are not in dispute: On December 16, 2005, Plaintiff was suspended from his employment as an attorney with the

Nueces County Attorney's Office.[4]  (PX-B ("Suspension Notice"), p. 1; DX-A, ("Alaniz Dep."), 5:6-7).  Earlier on December 16, 2005, Lieutenant Alaniz was asked by his superior, Assistant Chief Peralta, to be present in the County Attorney's Office and "keep the peace" when Plaintiff was notified of the suspension.[5]  (Alaniz Dep., 19:17-20:23).  Lieutenant Alaniz and two other Nueces County Sheriff's Deputies waited nearby while Plaintiff met with the Chief of Litigation in her office, and they escorted Plaintiff to his own office when the meeting was over. (Alaniz Dep., 39:13-40:4, 44:14-45:15).  Lieutenant Alaniz and the two deputies then waited nearby while Plaintiff gathered some things from his office and put them in a box.  (PX-A, ("Chadwell Decl."), ¶ 2, Alaniz Dep., 55:4-68:18).   Upon exiting Plaintiff's office, Lieutenant Alaniz informed Plaintiff that Lieutenant Alaniz was going to escort

---

[4]It was Lieutenant Alaniz' understanding that Plaintiff was terminated from his employment on December 16, 2005, rather than suspended.  (Alaniz Dep., 47:2-13).  Plaintiff was suspended with "notice of contemplated termination," and the notice clearly states that County Attorney Jimenez was "considering disciplinary action against [Plaintiff] in the form of termination." (Suspension Notice, p. 2).  However, since Plaintiff was technically suspended and not terminated on December 16, 2005, the Court will refer to the action taken by the County on that day as "suspension" of the Plaintiff.  The distinction between suspension and termination does not impact the analysis of Plaintiff's claim against Lieutenant Alaniz.

[5]As noted above, Lieutenant Alaniz' understanding at the time was that Plaintiff was terminated on December 16, 2005. (Alaniz Dep., 47:2-13).  For clarity of the record, the Court uses the term "suspended," to reflect the technical employment action that took place on that day.

Plaintiff off the premises.[6] (Alaniz Dep., 76:23-24). Plaintiff wanted to exit the courthouse through a certain route, which would eventually have taken him through a public portion of the building. (Chadwell Decl., ¶ 2; Alaniz Dep., 76:3-8). Lieutenant Alaniz informed Plaintiff that he had to leave the courthouse via another route, through a side door that led to a hallway connected to the Sheriff's Department. (Id.). At one point, Plaintiff attempted to leave the building through his chosen route, despite Lieutenant Alaniz' instructions to leave via the other door. (Chadwell Decl., ¶ 2; Alaniz Dep., 15-25). Lieutenant Alaniz held out his hand to stop Plaintiff from walking through him to Plaintiff's chosen exit route. (Chadwell Decl., ¶ 2; Alaniz Dep., 84:15-25, 85:25-86:9). Plaintiff eventually complied with Lieutenant Alaniz' instructions and left the courthouse through the exit originally selected by Lieutenant Alaniz. (Chadwell Decl., ¶ 2; Alaniz Dep., 86:19-20). Lieutenant Alaniz escorted Plaintiff off of Nueces County property, and Lieutenant Alaniz watched Plaintiff walk across the street to the parking lot. (Alaniz Dep., 108:8-19, 120:19-23).

**IV. Discussion**

    **A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to

---

[6]The building that Lieutenant Alaniz, the Deputies and Plaintiff were in was the Nueces County Courthouse.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a

genuine issue for trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

**B.   Section 1983**

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege or prove two elements: (1) that he was deprived of a right or interest secured by the Constitution and laws of the United States; and (2) that the deprivation occurred under color of state law. See West v. Adkins, 487 U.S. 42, 48 (1988).

**C.   Qualified Immunity**

The doctrine of qualified immunity protects state actors from

liability for civil damages under Section 1983 "so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Fontenot v. Cormier, 56 F.3d 669, 673 (5th Cir. 1995).[7] The issue of qualified immunity is ordinarily one of law for the court to decide. See Hunter v. Bryant, 502 U.S. 224, 228 (1991).

In examining the applicability of qualified immunity, the court employs a two-step analysis. See Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994); Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992). First, using "currently applicable constitutional standards," Rankin v. Klevenhagen, 5 F.3d 103, 106 (5th Cir. 1993), the court determines whether the plaintiff has "allege[d] the violation of a clearly established constitutional right." Siegert v. Gilley, 500 U.S. 226, 231 (1991). Second, the court assesses whether the state actor's conduct was objectively reasonable in light of the legal rules applicable at the time of the alleged violation. See Al-Ra'id v. Ingle, 69 F.3d 28, 31 (5th Cir. 1995); Fontenot, 56 F.3d at 673; Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir. 1993). "The inquiry is considered without

---

[7] The cloaking of state actors with a qualified immunity is grounded in the belief that a government cannot operate efficiently if its employees and agents are subjected to the costly and time-consuming rigors of trial and discovery. See Harlow v. Fitzgerald, 457 U.S. 800, 818-819 (1982). State actors should be able to act freely, within the bounds prescribed by law, but without the fear of having to defend their actions in lawsuits, and therefore the qualified immunity defense exists for claims brought under Section 1983. See Burns-Toole v. Byrne, 11 F.3d 1270, 1274 (5th Cir. 1994).

regard for the [state actor]'s actual state of mind or subjective motivations." Fontenot, 56 F.3d at 673.

The burden is on the plaintiff to overcome a defendant's defense of qualified immunity. See id.; Saldana v. Garza, 684 F.2d 1159, 1163 (5th Cir. 1982), cert. denied, 460 U.S. 1012 (1983). To do so, the plaintiff must show that the defendant's conduct was not objectively reasonable and that the defendant violated clearly established law. See Harlow, 457 U.S. at 819. The plaintiff must plead specific facts with a level of particularity so that they would, if proved, warrant the relief sought. See Burns-Toole, 11 F.3d at 1274. Moreover, the pleadings must show why the defendant-official cannot successfully maintain the defense of immunity. See id. (internal quotation omitted).

The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." Hunter, 502 U.S. at 229 (internal quotation omitted).

### D.  **Lieutenant Alaniz is Entitled to Qualified Immunity**

For the reasons set forth below, there is no genuine issue of material fact that Lieutenant Alaniz is entitled to qualified immunity on Plaintiff's Section 1983 claim against him.

### 1. **Liuetenant Alaniz Did Not Violate a Clearly Established Constitutional Right**

Plaintiff alleges that Lieutenant Alaniz illegally seized or detained Plaintiff in violation of the Fourth Amendment to the United States Constitution. (Complaint, ¶¶ 131-134). However, based on the law and the undisputed facts in this case, it is clear that Lieutenant Alaniz did not violate Plaintiff's Fourth Amendment rights.[8]

### a. **Fourth Amendment Seizure and Detention**

The "law regarding the seizure of persons is well developed", and "[n]ot all encounters between law enforcement officers and

---

[8]Of note, Plaintiff argues that Lieutenant Alaniz is not entitled to qualified immunity because he did not have "discretion" whether or not to be present in the County Attorney's Office during Plaintiff's suspension. (Response, p. 10). However, the issue is not whether Lieutenant Alaniz had the discretion to participate in the activity at all, but rather his discretionary authority in how to handle the situation with Plaintiff as it unfolded. Lieutenant Alaniz' instructions were very vague, he was told to "keep the peace", and to "just hang around, make sure everything went smooth". (Alaniz Dep., 19:24-25, 37:24-25). In fact, as noted in Plaintiff's own brief, Lieutenant Alaniz was given very few details about Plaintiff and his situation with the County Attorney's Office. (Response, p. 2; Alaniz Dep., 26:11-15). The undisputed facts demonstrate that Lieutenant Alaniz, head of courthouse security and a law enforcement officer with over 17 years experience, acted with discretionary authority in handling the situation with Plaintiff on December 16, 2005. (Alaniz Dep., 7:9-11, 26:11-18, 33:2-15, 77:11-15). Accordingly, Lieutenant Alaniz is entitled to plead the defense of qualified immunity. See Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004; Palmer v. Johnson, 193 F.3d 346, 351 (5th Cir. 1999); Haynes v. City of Beaumont, 35 S.W.3d 166, 175 (Tex. App.--Texarkana 2000).

citizens are seizures for purposes of the Fourth Amendment." United States v. Mask, 330 F.3d 330, 335 (2003). The test as to whether an encounter "between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment [is], 'if, ***in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave***.'" Immigration and Naturalization Serv. v. Delgado, 466 U.S. 210, 215 (1984) (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)) (emphasis added); see also Michigan v. Chesternut, 486 U.S. 567, 573 (1988) ("the police can be said to have seized an individual only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.") (internal citations omitted); California v. Hodari D, 499 U.S. 621, 628 (1991)[9]; Florida v. Bostick, 501 U.S. 429, 434 (1991); United States v. Galberth, 846 F.2d 983, 991 (5th Cir.), cert. denied, 488 U.S. 865. "The test's objective standard--looking to the reasonable man's interpretation of the conduct in question--allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment." Chesternut, 486 U.S. at 574. Moreover, "[t]his 'reasonable person' standard also ensures that

---

[9]The Supreme Court in Hodari D also held that the above referenced test (sometimes referred to as the "Mendenhall test") was "a *necessary*, but not a *sufficient* condition for seizure". Hodari D, 499 U.S. at 628 (emphasis in original).

the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." Id.

### b. **Plaintiff Was Free to Leave the Courthouse**

Plaintiff alleges that because he was not able to exit the courthouse via a route that would take him through public areas of the building, he was subjected to an illegal seizure and detention in violation of the Fourth Amendment.[10]  (Response, pp. 3, 6; Complaint, ¶ 134).

In this case, regardless of whether Plaintiff had access to public portions of the courthouse, it is undisputed that **Plaintiff was free to leave the building**, and end his encounter with Lieutenant Alaniz, simply by leaving the courthouse through a certain exit. (Chadwell Decl., ¶ 2; Alaniz Dep., 77:10-15, 83:12-16).  In fact, Plaintiff unequivocally admits in his brief that "[t]he evidence clearly establishes ... that Plaintiff had committed no crime **and was actually free to leave**". (Response, p. 6) (emphasis added).  The legal standard is clear, a person is illegally seized or detained when a reasonable person would not feel they were free to leave under the circumstances. See Chesternut, 486 U.S. at 573.  In this case, Plaintiff himself

---

[10] Plaintiff says that Lieutenant Alaniz "restrained [his] freedom of movement so as to prevent [him] from exiting through the door that leads to the public stairwell", and that Lieutenant Alaniz prevented Plaintiff "from exiting through the door that leads to the public stairwell near the elevators." (Chadwell Decl., ¶ 2).

admits that he was "free to leave"--the problem is that he did not like the exit route selected by Lieutenant Alaniz. (Response, p. 6; Chadwell Decl., ¶ 2; Alaniz Dep., 80:5-18, 84:15-25). Plaintiff does not have a constitutional right to choose his route of departure from a building, nor does he have a constitutional right to enter all public areas of the county courthouse.[11] Based on the law, undisputed facts and Plaintiff's own brief, Lieutenant Alaniz did not illegally seize or detain Plaintiff on December 16, 2005.

### 2. Lieutenant Alaniz' Conduct Was Objectively Reasonable

Moreover, even if Lieutenant Alaniz had violated Plaintiff's Fourth Amendment rights, there is no genuine issue of material fact that Lieutenant Alaniz' conduct was objectively reasonable. Lieutenant Alaniz "oversee[s]" and is "responsible for courthouse security." (Alaniz Dep., 17:5-6, 10). He was asked to "keep the

---

[11] An individual does not have an unlimited and unrestricted right to a public building. See Adderley v. State of Florida, 385 U.S. 39, 47-48 (1967) (holding that a protestors did not have a right to remain on public property over the sheriff's objection); In re Prewitt, 84 Fed.Appx. 397, 398 (5th Cir. 2003) (holding that a district court had the right to ban an attorney from the third floor of the federal courthouse); Raz v. Oakes, 48 Fed.Appx. 481 (5th Cir. 2002) (appellant's "various claims of impeded access to the courthouse" do not allege "acts that amount to a constitutional violation"); Lewis v. Branson, 2003 WL 44478, *2 (N.D. Tex. 2003) (plaintiff was not allowed personal access to the courthouse without express permission from the court). Moreover, if the Court accepted Plaintiff's argument as true, a police officer would violate the Fourth Amendment every time he directed people to use a certain entrance or exit to a public building, or to stay off an ordinarily public street that is closed for an event or road construction.

peace" and make sure everything was "smooth" when Plaintiff was suspended from his employment, and he was told that the County Attorney's Office "was concerned about the situation". (Alaniz Dep., 19:20-25, 37:24-25).  It is undisputed that Plaintiff spent some time arguing with Lieutenant Alaniz as to which exit Plaintiff could use to leave the building, and that Plaintiff attempted to disregard Lieutenant Alaniz's instructions and "walk through" Lieutenant Alaniz to exit via Plaintiff's chosen route.  (Chadwell Decl., ¶ 2; Alaniz Dep., 80:5-18, 84:15-86:9).  The Court finds that Lieutenant Alaniz' conduct in these circumstances was objectively reasonable, given that Plaintiff was just informed of his suspension, Plaintiff's attempted noncompliance with Lieutenant Alaniz' instructions, and Lieutenant Alaniz' position as the officer responsible for security of the courthouse.[12]  See, e.g., Raz v. Oakes, 48 Fed.Appx. at 481 (finding that the defendant U.S. Marshals "were protected from suit under the qualified-immunity doctrine because their actions were objectively reasonable in light of their duty to protect court personnel and property".).

In sum, there is no genuine issue of material fact that Lieutenant Alaniz did not violate a clearly established

---

[12] The Court notes that it is not relevant that Lieutenant Alaniz thought that Plaintiff had been terminated rather than suspended on December 16, 2005.  (Alaniz Dep., 47:2-13).  A termination and a suspension "with contemplation of termination" are both negative employment-related developments, and the fact that something negative had occurred was the operative consideration.  (Suspension Notice, p. 1).

constitutional right, and further, there is no genuine issue of material fact that Lieutenant Alaniz' conduct on December 16, 2005 was objectively reasonable.  Accordingly, Lieutenant Alaniz is entitled to qualified immunity on Plaintiff's Section 1983 claim for violation of his Fourth Amendment rights.

**V.   Conclusion**

For the reasons set forth above, this Court hereby GRANTS Lieutenant Alaniz' Motion for Summary Judgment.  (D.E. 51). Plaintiff's claim against Lieutenant Alaniz is hereby DISMISSED with prejudice, and Lieutenant Alaniz is hereby DISMISSED from this litigation.

SIGNED and ENTERED this 26th day of October, 2006.

_____
Janis Graham Jack
United States District Judge